# DECLARATION IN SUPPORT OF VERIFIED COMPLAINT

Under 28 U.S.C. § 1746, I, Jonmichael Martinez, a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, make the following unsworn declaration, under the penalty of perjury, in support of the Verified Complaint to which this declaration is attached:

## I. Introduction

1. This declaration is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to a valid state search warrant. The Defendant Property is subject to forfeiture under 21 U.S.C. § 881 because the Defendant Property is involved in or constitutes the proceeds of drug trafficking, in violation of 21 U.S.C. § 846 (drug trafficking conspiracy).

2. This declaration is based upon my personal knowledge and experience obtained as case agent in the above case and information I have received from other law enforcement officials. I have not provided every known detail concerning the case, but rather, only sufficient factual allegations to establish my reasonable belief that the government will be able to bear its burden of proof in these civil forfeiture proceedings.

## II. Declarant's Background and Experience

2. I have been a DEA Special Agent since September 2026. I retired as a Lewisville Police Officer after approximately 22 years, working as a

narcotics detective for approximately 9 years. As a DEA Special Agent, I investigate criminal and civil violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. I have received specialized training in laws relating to the enforcement of the Controlled Substances Act and have testified in judicial proceedings for violations of the Controlled Substances Act.

3. In my law enforcement career, I have participated in debriefing dozens of defendants, informants, and witnesses who had personal knowledge about narcotics, narcotics trafficking, and methods of narcotics distribution. I have participated in all aspects of drug investigations, including conducting surveillance, executing search warrants, executing arrests, working with confidential informants, and using court-ordered eavesdropping devices.

4. Through training and experience, and through the training and experience of other narcotics agents with whom I have talked, I have learned the following:

a. That criminal organizations, including large-scale drug traffickers, maintain and handle large amounts of United States currency to finance their ongoing illicit businesses;

b. That it is common practice for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

c. That persons involved in large-scale drug trafficking conceal in their residences, vehicles and businesses caches of drugs, large amounts of currency, and evidence of

financial transactions relating to the obtaining and secreting of large sums of money acquired from engaging in narcotics-trafficking activities;

d. That it is common practice for drug traffickers to keep firearms near their cashes of illicit drugs and drug proceeds, in order to protect both; and

e. That the Courts have recognized unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular trafficking in controlled dangerous substances (*see United States v. Barnes*, 604 F.2d 121, 147 (2 Cir. 1979)).

## III. <u>Items to be Forfeited to the United States of America</u>

5. The Defendant Property sought for forfeiture include the following assets[1]:

| **Asset ID** | **Asset Description** |
|---|---|
| 26-DEA-724273 | $111,450.00 U.S. Currency |
| 26-DEA-724275 | $520.00 U.S. Currency |
| 26-DEA-724276 | One (1) 2017 Ferrari 488 Spider Convertible, VIN: ZFF80AMA3H0228132, California license: 8MSV281 |
| 26-DEA-724277 | One (1) Bushmaster Firearms – US (BHT) Rifle, Model XM15-E2S, CAL: .556, Serial No: BFI402897 |
| 26-DEA-724278 | One (1) Smith & Wesson – US (SW) Pistol, Model SD40VE, CAL: .40, Serial No: HEB9815 |
| 26-DEA-724291-1 | One (1) Rolex Oyster Perpetual DateJust Watch, Model: 12633, Two Tone Stainless and Yellow Gold, Serial No: 532677W6 |
| 26-DEA-724291-2 | One (1) 14K White Gold Diamond Eternity Necklace, weighing 34.55 grams, Diamonds: 2.50ct total weight |

which were seized on October 6, 2025, from Carlos FRIAS in Cedar Hill, Texas, pursuant to a state search warrant.

[1] Other seized assets have been placed into administrative and state forfeiture. The United States has settled with the owner of a seized firearm, and the DEA has agreed to return 3 seized vehicles.

## IV. Facts and Circumstances

6. In March 2025, members of the DEA Dallas Enforcement Group 1 began an investigation into a Drug-Trafficking Organization ("DTO") which was distributing large amounts of narcotics to include marijuana, cocaine, and methamphetamine. This DTO is also involved in the laundering of U.S. Currency. During surveillance of different locations associated with associates of the DTO in and around the Dallas, TX area ("DFW"), multiple people were identified that were involved in the distribution of narcotics to include marijuana and the laundering of the U.S. Currency.

7. In mid-2025, law enforcement officers identified a subject by the name of Carlos Hubert FRIAS who was in the business of selling large quantities of illegal marijuana in DFW. During surveillance in May 2025, officers observed FRIAS help load boxes into a vehicle, which was subsequently followed and an officer conducted a traffic stop on it. The officer established probable cause to search the vehicle and discovered that the boxes in the rear of the vehicle contained approximately 100 pounds of marijuana. The boxes that the marijuana was in appeared to be the same boxes FRIAS had helped load into the vehicle just prior to the vehicle leaving DFW.

8. In August 2025, surveillance was conducted at FRIAS's residence located in Cedar Hill, Texas. A subject, unidentified to law enforcement at

that time, arrived at the location and went into FRIAS's residence, exiting a short time later carrying a large brown box. A traffic stop was conducted on the subject and law enforcement recovered between 5 and 50 pounds of marijuana from the subject's vehicle. The subject was arrested by a local police department for possession of marijuana.

9. On or about October 2, 2025, a Denton County Sheriff's Office Confidential Source ("CS") arranged to purchase marijuana from FRIAS. FRIAS agreed to meet the source at a location within Dallas County, Texas. The transaction took place and the CS purchased the marijuana from FRIAS for an agreed-upon price. Law enforcement officers surveilled FRIAS from the time he left his residence to the meeting location. FRIAS drove to the meeting location without stopping. Once the transaction was completed, officers surveilled FRIAS as he returned to his residence with the U.S. Currency he received from the sale of the marijuana. The marijuana purchased by the CS was field tested and showed a presumptive positive for marijuana.

10. On October 6, 2025, the DEA executed a State of Texas search warrant at FRIAS's Cedar Hill , Texas residence. FRIAS and his adult daughter were present at the residence at the time of execution of the search warrant, while FRIAS's significant other arrived during the search.

11. During the search of the residence, agents recovered the following:

a. 69,000 grams of marijuana;

b. Multiple boxes of pre-rolled marijuana cigarettes;

c. Two jars of marijuana extract oil;

d. $111,450.00 U.S. Currency located near a duffle bag and a couple of trash bags containing suspected marijuana and in a bar near a money counter and a handgun;

e. $520.00 U.S. Currency from FRIAS's wallet located in the master bedroom closet;

f. A 2017 Ferrari 488 Spider Convertible;

g. A Bushmaster Rifle;

h. A Smith & Wesson Pistol; and

i. A watch and a necklace.

12. Despite the large amount of currency and valuable assets seized, according to the Texas Workforce Commission, FRIAS has not had a documented employment history since 2021.

13. FRIAS was not arrested on October 6, 2025, but he did voluntarily speak to law enforcement following the search and seizure of evidence from his residence. FRIAS made statements admitting that the product seized from his residence was marijuana that he had received from a known coconspirator.

14. During the course of the investigation, law enforcement has seized marijuana traceable to a known coconspirator from multiple locations,

including locations in the Eastern District of Texas. The marijuana seized from FRIAS's known coconspirator is packaged identical to the marijuana seized from FRIAS's residence.

15. On or about March 2, 2026, the DEA initiated administrative forfeiture of the Defendant Properties. On or about March 19, 2026, FRIAS filed an administrative claim to the Defendant Properties, stating only that he was "the sole and exclusive owner of this property" and that he would produce supporting documents at a later time. No such documentation has been provided.

## V. Conclusion

16. The results of this investigation support my reasonable belief that the government can meet its burden of proof that the Defendant Property is directly related to and/or derived from the illicit distribution of controlled substances. This determination was made on the facts and circumstances presented above.

17. I reasonably believe, based on the above-listed facts and circumstances, that the Defendant Property was intended to facilitate or used to further a drug crime, or is directly related to drug proceeds of FRIAS or his associates, in violation of 21 U.S.C. § 846 (drug conspiracy), and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881.

18. I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this18th day of November, 2026,

Jonmichael Martinez
Special Agent
Drug Enforcement Administration